### INTERNATIONAL & G. N. RY. CO. v. MALLARD. (No. 721-4287.)

(Commission of Appeals of Texas, Section A. Dec. 10, 1925.)

**1. Criminal law ☞13 — Statute prohibiting driving of automobile faster than 6 miles per hour over obscured railroad crossing held void for indefiniteness.**

Acts 1917, c. 207, § 17 (Vernon's Ann. Pen. Code Supp. 1918, art. 820*l*), now Pen. Code 1925, art. 800, prohibiting driving of an automobile faster than 6 miles per hour over an obscured railroad crossing, *held* void for indefiniteness.

**2. Statutes ☞46—Bad grammar no constitutional objection to statute.**

Bad grammar or lack of grammar of itself affords no constitutional objection to a statute.

**3. Constitutional law ☞251—Statute, to be valid, must accord due process of law.**

Statute, to be valid, must accord due process of law.

**4. Railroads ☞350(22) — Automobile driver held not as matter of law negligent at obscured crossing.**

Acts 1917, c. 207, § 17 (Vernon's Ann. Pen. Code Supp. 1918, art. 820*l*), now Pen. Code 1925, art. 800, prohibiting driving of an automobile faster than 6 miles per hour over obscured railroad crossing, being void, automobile driver *held* not as matter of law, guilty of contributory negligence because speed of his car as he approached track exceeded 6 miles per hour.

**5. Trial ☞350(3)—Refusal of issues pertinent to void statute is not error.**

Refusal of issues pertinent only to a statute which has been declared void is not error.

Error to Court of Civil Appeals of Sixth Supreme Judicial District.

Action by W. E. Mallard against the International & Great Northern Railway Company. Judgment for plaintiff was affirmed in 262 S. W. 789, and defendant brings error. Affirmed.

Morris, Sewell & Morris and Samuel B. Dobney, all of Houston, for plaintiff in error.

J. D. Pickett, of Palestine, for defendant in error.

NICKELS, J. Mallard sued, and recovered judgment, for personal and property injuries incurred as a result of a collision between his

automobile and a locomotive, etc., operated by Baker as receiver of the International & Great Northern Railway Company, predecessor, under articles 6624, 6625, R. S. 1911, of plaintiff in error. The judgment was affirmed by the honorable Court of Civil Appeals. 262 S. W. 789.

The case is here on jurisdictional questions of substantial identity with those raised and overruled by the Court of Civil Appeals in I. & G. N. R. R. Co. v. Ochler, 262 S. W. 785, and upon a contention that Mallard was, as a matter of law, guilty of contributory negligence (which proximately caused or helped to cause the injuries), in that he did not reduce the speed of his car as he approached the railroad track to six miles per hour, as required by the terms of article 820l, Vernon's Tex. Civ. & Crim. Stat. 1918 Supp.

The Supreme Court denied writ of error in I. & G. N. R. R. Co. v. Ochler, supra, and because of this we regard that case as being determinative of the jurisdictional questions now presented. Hence we express no further opinion in respect thereto.

The railroad company asserts that Mallard violated the terms of article 800, Penal Code 1925 (section 17, chapter 207, Acts of 1917), quoted at length in the opinion of the honorable Court of Civil Appeals, and, consequently, that he was guilty of such contributory negligence as precludes his recovery.

[1] The statute pleaded, and whose violation is thus interposed as contributory negligence, prescribes no standard or rule of conduct. It lacks that degree of certainty essential to a law. As applicable to the driver of a car as he approaches a railroad crossing, it affords only a subject to debate, in his mind, as to whether the contour, et cetera, of the landscape is such as to require him to change his plan. If he determines that the facts require a change, he must then decide upon the point at which reduction of speed is demanded. Moreover, he may be so circumstanced as to require a definite and irrevocable finding by him of a fact about which he may not know anything; that is to say, there may be near the crossing a person having the appearance of a flagman, and whose conduct (inadvertently, perhaps) may indicate the "way is clear," but, if that person be not a flagman, or his supposed "signals" be something else, the driver would be held to scorn the law if he, in best of faith, act upon the appearances. Rules of conduct, we believe, cannot rightly be predicated upon such ambiguous conditions. The statute is essentially Caliguan—lacking in that definiteness necessary to due process—and therefore void, whether it be regarded as a criminal law in the strict sense or a remedial enactment. State v. Foster, 31 Tex. 578; Augustine v. State, 41 Tex. Cr. R. 59, 52 S. W. 77, 96 Am. St. Rep. 765; Cogdell v. State (Tex. Cr. App.) 193 S. W. 675; Russell v. State, 88 Tex. Cr. R. 512, 228 S. W. 566; Snider v. State, 89

Tex. Cr. R. 192, 230 S. W. 146; Graham v. Hines (Tex. Civ. App.) 240 S. W. 1015; Griffin v. State, 86 Tex. Cr. R. 498, 218 S. W. 494; Cook v. State, 26 Ind. App. 278, 59 N. E. 489; Strickland v. Whatley, 142 Ga. 802, 83 S. E. 856; Elsbery v. State, 12 Ga. App. 86, 76 S. E. 779; U. S. v. Capitol Traction Co., 34 App. D. C. 592, 19 Ann. Cas. 68; Tozer v. U. S. (C. C.) 52 F. 919; Ex parte Jackson, 45 Ark. 164; Brill's Cyclopedia of Criminal Law, vol. 1, p. 132.

[2] The vice of the so-called law finds illustration in the fact that our Court of Civil Appeals, composed of erudite, able, and distinguished judges, have encountered great difficulty in arriving at any construction of the act which gives it a meaning, and by the fact that two of those courts (in T. & N. O. Ry. Co. v. Harrington [Tex. Civ. App.] 209 S. W. 685, and in S. A. & A. P. Ry. Co. v. Singletary [Tex. Civ. App.] 251 S. W. 325) interpreted it as meaning one thing while two others of those courts (in Schaff v. Bearden [Tex. Civ. App.] 211 S. W. 503, and Graham v. Hines, supra) reached the conclusion it meant something else. The difficulty which those courts have met emphasizes the basic injustice of conditioning the citizen's rights upon his ability (on the instant) to parse the language used and glean some correct meaning from its ambiguities. Bad grammar (the rather, lack of grammar) of itself affords no constitutional objection to a statute; but where, as here, a variety of possible meanings results, there is, in contemplation of law, no meaning at all.

[3] The general object at which the Legislature aimed is free of doubt. And to its achievement the lawmakers directed two great elements of governmental power. It was known of all men that vicinity of highway and railroad intersection is an area of peril—a "proclamation of danger." The slaughter and maiming incident to suicidal disregard of inherent warning, the dementia of modern high speed and its sequent woe, were equally apparent. Life, limb, and correspondent vigor, no less than liberty, are embraced in the patrimony which is of rightful interest to the state, and which it may appropriately function to preserve. There was, therefore, an effort for the general welfare. Again, the statute in question is a part of a comprehensive act whose broad subject is the use of highways belonging to the state or its political subdivisions. In a general sense, the property whose use is there regulated is not the property of those who drive automobiles, etc., on or across it, and that right of user is substantially permissive. The state, in the enactment of the act, recognized (the rather, permitted) the user, but undertook to attach conditions to that recognition and consent, and this (if the conditions be reasonable and sufficiently stated), unquestionably, it had the right to do. What the state purposed to do was to keep its property from being

used in a manner plainly inimical to the well-being of its citizens. Two great objects of public concern, therefore, blend in the law, and the statute is remedial in a most exalted sense. But, in lawmaking at least, a good purpose cannot justify a wrong method of its achievement. The inexorable command is that a statute, as it is with a judgment, must accord due process of law. Nothing is paramount to that requirement. The security of property, life, and liberty depend upon its observance. Paul, on occasion, was allowed due process, and lived; because of its subsequent denial, he died. The death of One much higher, and wholly guiltless, was accomplished through its nonobservance. The security of property and liberty, no less than life itself, depends upon faithful observance of its behest. Infidelity here invites certain destruction. Hence, the duty to declare the statute void is plain, although the occasion of its performance is most regrettable.

[4] It results, of course, that Mallard did not, as charged, violate the law, and was not, as a matter of law, guilty of contributory negligence. The speed of his car 'as he approached the track exceeded 6 miles per hour. A special issue as to his alleged negligence in this respect was submitted to the jury, and the jury answered in his favor.

[5] The railroad company requested special issues inquiring whether or not Mallard "at some point nearer than 30 feet of said track reduced the speed of his motor vehicle to a speed not to exceed 6 miles per hour before he attempted to make said crossing" and whether or not his failure to do so (if he did fail in this particular) contributed "to cause the collision and injury." The issues, as requested, had pertinency only if the statute referred to applied to the situation, and because the statute is void the submission of the issues was properly refused.

We recommend affirmance of the judgment.

Judge Bishop tried the case in the district court; for that reason he took no part in its consideration here.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.